UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 19 CR 669 |
| CHRISTOPHER JORDAN, | Judge Edmond E. Chang |
| Defendant. | |

## UNITED STATES' OPPOSITION TO DEFENDANT JORDAN'S MOTION FOR A NEW TRIAL UNDER RULE 33

The United States respectfully submits this memorandum in opposition to Defendant Christopher Jordan's Motion for a New Trial Under Rule 33 (ECF Nos. 837, 838) ("Motion" or "Mot."). As set forth below, the Court should deny the Motion.

## I. Legal Framework

Federal Rule of Criminal Procedure 33 permits a court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a); *see United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989) ("The decision to grant or deny a motion for new trial rests within the sound discretion of the trial court."). But the "[e]xercise of power conferred by Rule 33 is reserved for only the most extreme cases." *United States v. Hamdan*, 910 F.3d 351, 357 (7th Cir. 2018) (quotations omitted). "A jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly." *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994). A new trial is justified only in "rare cases in which consideration of the evidence leaves a strong doubt as to the defendant's guilt of the

charged offense." *United States v. Peterson*, 823 F.3d 1113, 1122 (7th Cir. 2016) (quotations omitted); *see also United States v. Zambrano*, No. 20 CR 49, 2021 WL 6125872, at *5 (N.D. Ill. Dec. 28, 2021) ("Motions for a new trial should be granted only in exceptional circumstances."). When a defendant's "motion for a new trial simply repeats arguments that the Court has already rejected," courts have "more quickly review[ed] and dispose[d] of [the] additional arguments that have already been addressed in previous opinions." *Zambrano*, 2021 WL 6125872, at *5.

## II. The Court Properly Excluded Post-Dodd-Frank Compliance and CME Documents

At trial, the government admitted documentary evidence and testimony showing that, from 2008 to 2010, the policies, rules, and training materials of JPMorgan, Credit Suisse, and the CME all prohibited the deceptive trading strategy that Jordan repeatedly used to mislead the market. In his Motion, Jordan asserts that he is entitled to a new trial because the Court erroneously excluded later-in-time bank compliance and CME documents which (he claims) show that, in fact, traders were not put on notice that "spoofing" was a prohibited trading practice until years after his charged offense conduct. Mot. at 1-4, 7-14. According to Jordan, the Court's erroneous ruling prevented him from effectively impeaching the government's witnesses—Mark Catana (JPMorgan), David King (Credit Suisse), and Erin Middleton (CME)—when they testified that the policies and rules clearly prohibited spoofing from 2008 to 2010. *Id.* Jordan's argument lacks merit for at least three independent reasons.

### a. The Government Introduced Substantial Evidence of Jordan's Intent to Defraud

As a threshold matter, Jordan's Motion should be denied because this is not one of those "rare cases" where consideration of the evidence leaves "a strong doubt" as to the defendant's guilt of the charged offense." *Peterson*, 823 F.3d at 1122. At trial, the government introduced ample evidence proving Jordan's trading strategy was intended to deceive other market participants, including (1) Jordan's own statements to Supervisory Special Agent ("SSA") Luca admitting that he placed orders he intended to cancel to "mislead the market"; (2) Jordan's lies to the CFTC in 2010 to hide the true nature of his trading; and (3) private chats in which Jordan describes how he tricked others in the market.[1] The government also presented testimony from numerous witnesses who explained that Jordan's trading strategy was inherently deceptive.[2]

In light of this substantial evidence of fraudulent intent, the government could have proven its case without showing that Jordan knew his deceptive trading

---

[1] *See, e.g.*, Tr. 506:23-25, 507:01-05, 507:25-508:06, 555:17-21, 560:19-25, 566:03-08, 567:01-13, 568:05-09, 689:03-05, 689:12-14 (SSA Luca) (testimony relating to Jordan's confession); GX 56; Tr. 521-527; 641-656 (SSA Luca) (testimony relating to Jordan's lies to the CFTC); GX 5, GX 7, GX 8.

[2] *See, e.g.*, Tr. 759:05-09 (Mark Catana) ("it's inherently deceptive"); 710:08-15 (David King) ("Placing an order with the intent to cancel … would deceive other market participants into believing that the order that was placed that may affect a price was meant to be executed and filled."); 1057:02-05 (Prof. Kumar Venkataraman) ("A spoof order is an order that is submitted to an exchange without the intention of execution in order to mislead investors by injecting misleading information about demand and supply in the market."); 1004:08-13 (Travis Varner) (The model works on supply and demand, so … [a spoof order] could cause us to create orders we didn't intend to send or it could cause us to trade at prices we wouldn't trade at normally.")

strategy was prohibited by JPMorgan or Credit Suisse's compliance policies. Nevertheless, at trial, the government presented documents and testimony establishing that JPMorgan and Credit Suisse specifically trained their precious metals traders that they could not trade for the purpose of misleading the market— in some instances, using the same phrase that Jordan used to describe his own deceptive trading strategy to SSA Luca. *Compare* Tr. 506:23-25 (SSA Luca) ("[Jordan] said that he placed those orders in order to mislead the market") *with* GX 33 at 3 ("Employees may not engage in transactions or other activities to: create a false or misleading appearance of active trading … or of depth or liquidity of the market …. Employees should not disseminate false or misleading information to the effect that the price … will or is likely to rise or fall."); Tr. 719:6-11 (David King) (explaining that GX 33 was "one of the first things that Mr. Jordan was trained on when he joined Credit Suisse")[3] These compliance-related documents and testimony, therefore, corroborated the government's other intent evidence, which was substantial. *See* Gov't Rule 29 Opposition at 10-15.

---

[3] CME Rule 432 (GX 63), which Jordan certified in writing that he read, understood, and agreed to comply with (GX 46), similarly prohibited engaging in fraud, including Jordan's trading strategy. Indeed, at trial, Jordan admitted evidence showing that the CME had prosecuted another trader under Rule 432 for employing the same deceptive trading strategy as Jordan (*i.e.*, placing trades that he intended to cancel) during the same time period as Jordan (*i.e.*, 2009) and that the reason CME considered that trading strategy to be deceptive was because it "misled other market participants" (which is the same phrasing that Jordan used when he confessed to SSA Luca). DX 40; *see also* Tr. 988:04-989:10.

### b. Jordan Was Not Prejudiced by the Exclusion of the Post-Dodd-Frank Materials

Jordan's Motion should be denied because he fails to show that he was prejudiced by the exclusion of these later-in-time bank compliance and CME documents. *See United States v. Maclin*, 915 F.3d 440, 444 (7th Cir. 2019) (explaining that a new trial is appropriate "only if there is a reasonable possibility that the trial error had a prejudicial effect on the jury's verdict"); *United States v. Reed,* 2 F.3d 1441, 1451 (7th Cir. 1993) (stating that a defendant seeking a new trial must demonstrate prejudice, not as a matter of speculation, but as a demonstrable reality). Jordan claims the Court's exclusion of this evidence prevented him from effectively impeaching Catana, King, and Middleton when they testified that their institution's policies and rules clearly prohibited spoofing from 2008 to 2010. *See* Mot. at 3-4. This prejudice argument fails for several reasons.

*First*, all three compliance witnesses admitted on direct that these policies and rules did not use the word "spoofing." *See* Tr. 762:08-20, 763:22-764:04 (Catana); 706:20-707:06 (King); 932:22-933:10 (Middleton). Therefore, the excluded post-Dodd-Frank evidence would have merely reiterated a substantive fact the witnesses already acknowledged on direct, not impeached a substantive fact by contradiction. *See United States v. Kozinski*, 16 F.3d 795, 805 (7th Cir. 1994) (explaining that "[i]mpeachment by contradiction . . . involves presenting evidence that part or all of a witness' testimony is incorrect." (quotation omitted)). Simply put, there was nothing about these three witnesses' testimony that needed to be contradicted by the excluded evidence. Jordan, therefore, cannot show prejudice from the Court's decision.

*Second*, the Court afforded Jordan ample opportunity to revisit, repeat, and emphasize the substantive fact that the 2008-2010 compliance policies and CME rules did not contain the word "spoofing" in them. Jordan thoroughly cross-examined all three witnesses to underscore this point.[4] *See, e.g.*, Tr. 795:07-20, 796:19-25, 797:18-22, 799:03-05, 853:20-863:01, 867:17-868:22, 892:05-15, 896:11-21 (Catana); 732:9-734:08 (King); 955:11-960:20, 961:05-16 (Middleton). On cross-examination, Jordan also established that the banks and the CME could have included this language had they wished to do so, but had not done so. *See* Tr. 798:16-21 (Catana); 734:25-735:03 (King); 960:20-961:20 (Middleton). On this record, Jordan cannot show that the verdict would have been different had he been permitted to use the excluded documents to ask the same questions and make the same argument that he already made to the jury without such documents. *See Maclin*, 915 F.3d at 444 ("The applicable standard under Rule 33 requires a new trial only if there is a reasonable possibility that the trial error had a prejudicial effect on the jury's verdict.") (quotation omitted); *Reed*, 2 F.3d at 1451 ("mere speculation or conjecture is insufficient to warrant a new trial").

*Third*, Jordan's ability to demonstrate prejudice is further circumscribed by the fact that the Court had twice instructed the jury that "[e]ven if there is evidence that the defendant violated any compliance policies or CME rules, that violation

---

[4] As the Court noted during the pretrial conference when explaining its decision to exclude the post-Dodd Frank materials: "Mr. Jordan will have the opportunity to cross on the absence of explicit language in the compliance policies of both Chase and presumably Credit Suisse as well." 10/26/22 Tr. 46.

would not, standing alone, be sufficient to convict the defendant." ECF No. 804 at 16; Tr. 929:05-24. The Court should presume the jury understood and followed the instructions given to them unless Jordan demonstrates there is an "overwhelming probability" that the jury was unable to follow the instructions as given (which he does not attempt to do here). *United States v. Puckett*, 405 F.3d 589, 599 (7th Cir. 2005). The 2008-2010 policies and rules, therefore, were at best corroborative of the other intent evidence.

*Fourth*, exclusion of the post-Dodd-Frank bank compliance and CME documents was not prejudicial because had the Court allowed such evidence, the jury likely would have also heard that after Dodd-Frank's explicit ban on spoofing became effective in July 2011 (and put everyone on notice of spoofing's illegality), Jordan continued to engage in the same deceptive trading strategy. *See* Order, ECF No. 744 at 4-5. Such evidence, in the form of his continued spoofing while at First New York Securities from June 2011 through October 2011, would have provided further support for Jordan's specific intent to defraud. *Id.* at 4.

### c. The Court Properly Excluded the Post-Dodd-Frank Materials on Rule 403 Grounds

Ultimately, the Court's ruling excluding the post-Dodd-Frank compliance and CME documents on Rule 403 grounds was prescient and entirely appropriate. Specifically, the Court explained:

> [T]here is a significant 403 problem to then introduce these after-the-fact changes in the policies because I think the government is right that in order for the witnesses to then explain on redirect why did these policies then become explicit, will get into the Dodd-Frank quagmire, and it does

> pose the risk of the -- this imperfect mistake of law defense which I think is a serious specter in this case.

10/26/2022 Tr. at 46:08-14. In his Motion, Jordan argues that "any risk of juror confusion regarding a mistake of law defense could have been handled by a jury instruction on the subject." Mot. at 13-14. Remarkably, Jordan took the exact *opposite* position when this exact issue arose during jury deliberations. When the jury expressed confusion about the mistake of law defense and the government argued for an instruction to resolve the jury's apparent confusion, Jordan took a hardline in opposition to the government's request:

> We would disagree strongly with the government's position. The instructions are the instructions. These are the well thought-out and approved Seventh Circuit pattern instructions on "knowingly." Any further instruction would have a tendency to inadvertently, and certainly not intentionally, but place a thumb on the scale one way or the So in our view, your Honor, we should instruct the jury that, "You have your instructions. Review them in total, and continue deliberating."

Tr. 1395:20-1396:04. In any event, this series of events underscores why the Court's ruling to exclude post-Dodd-Frank bank compliance and CME documents was not erroneous, and also provides a third independent basis to deny Jordan's Motion.

## III. The Court Properly Excluded Jordan's Self-Serving Exculpatory Statement to the FBI

In his Motion, Jordan asserts that the Court's decision to exclude his statement to the FBI that he "did not think what he was doing was wrong," Mot. Ex. J at 5, was "erroneous and highly prejudicial" because it presented a "distorted and incomplete picture of his statement to the FBI," Mot. at 14-15. This claim has no merit. The Court

previously considered and rejected the arguments raised in the Motion, and nothing that transpired during trial provides a basis for the Court to revisit its prior decision, nor does Jordan present any basis to do so in his Motion.

As a threshold matter, the Motion fails to address key portions of the Court's order that denied his pre-trial Rule 106 motion or to explain why the Court's prior ruling does not foreclose these same Rule 106 arguments he raises post-trial. *See* Order, ECF No. 787 (Nov. 28, 2022) (the "Rule 106 Order"). For example, as the Court explained in its Rule 106 Order:

> Nothing about Jordan saying that he did not think he was doing anything "wrong" factually clarifies the to-be-introduced statement that he placed orders with an intent to cancel them. Whether or not Jordan thought he was doing something "wrong" does not clarify any misleading impression arising out of the statement that he placed orders with an intent to cancel. Remember that mistake of law is *not* a defense to a wire-fraud charge, and willfulness is not an element of that crime. Of course, the government still must convince the jury that an (unconditional) intent to cancel amounts to an intent to defraud, but none of this bears on whether Jordan gets to introduce the omitted statement under Rule 106.

Rule 106 Order at 2-3. In his Motion, Jordan fails to acknowledge the fundamental—and undisputed—point that willfulness is *not* an element of wire fraud affecting a financial institution. *See United States v. Blagojevich*, 794 F.3d 729, 739 (7th Cir. 2015) (explaining that the wire fraud statute "requires a specific intent to defraud but not willfulness or any other proxy for knowledge of the law"). Jordan's statement that "did not think what he was doing was wrong," Mot. Ex. J at 5, is *not* a "denial of *mens rea*" (as he claims), *see* Mot. at 17, but rather a purported mistake of law

argument that is not a defense to wire fraud.[5] Admitting Jordan's statement, therefore, would not provide any necessary context for the jury as it considered the evidence, but rather inject an irrelevant and confusing concept into their deliberations.

Undeterred, Jordan claims "there was no risk of jury confusion about [his] understanding of the legal landscape at the time" because the "parties studiously avoided raising a mistake of law defense at trial." Mot. at 18. First, as discussed in the Part IV.B below, the jury's note during deliberation indicated that there likely was confusion about whether mistake of law was a valid defense. Second, Jordan's "understanding of the legal landscape at the time" was irrelevant to whether the government had presented sufficient evidence demonstrating he was guilty beyond a reasonable doubt of wire fraud affecting a financial institution. Finally, Jordan did not "studiously" avoid raising a mistake of law defense, but rather he acknowledges "his central theory of defense" was that he spoofed "believing it was a permitted trading practice under applicable exchange rules and bank compliance policies at the time." Mot. at 18; *see also* Tr. 1351:16-17 (asserting in defense closing argument, "As long as you're within the rule, it's fair game."). That is just another way of saying that Jordan engaged in spoofing but did not think it was wrong. Ultimately, none of these points are reasons to admit his statement into evidence, which would only have

---

[5] In this Motion, Jordan also ignores his prior statements to the CFTC, which contradict his claims to the FBI that he did not know what he was doing was wrong. *See* United States Opp. to Deft. Jordan's Mot. to Admit a Limited Portion of His Statements to Law Enforcement Pursuant to Fed. R. of Evid. 106 at 6, ECF No. 760 (Nov. 16, 2022).

exacerbated jury confusion about whether mistake of law was a valid defense in this case.

Jordan also claims that his statement "appropriately contextualized" the rest of his statements to the FBI, *see* Mot. at 18, but Jordan fails to address the Court's finding in its Rule 106 Order that "Jordan's proposed statement itself is ambiguous," Rule 106 Order at 3. As the Court explained,

> Here, to tell the jury that Jordan did not think what he was doing was "wrong" would invite the jury to speculate about what he meant: not "wrong" as in legal? Or not "wrong" as in a permitted business trading response in the battle against algorithms? Or not "wrong" as in not a fraudulent representation? This is not to say that Rule 106 requires perfect clarity from the omitted statement, but it does require that the statement help correct a potential misimpression, not inject more confusion.

*Id*. The rule of completeness requires that a statement to be admitted is relevant and which "clarifies or explains the portion offered by the opponent." *United States v. Green*, 101 F.3d 1183, 1190 (7th Cir. 1996). Jordan's ambiguous statement fails to meet this standard. In addition, as the Court explained during trial, "nothing in [Agent Luca's direct examination] testimony has altered the prior decision in that the additional proffered statement is not needed to clarify or in fairness complete the context of the admitted statements." Tr. 541:11-14. Jordan fails to demonstrate otherwise in his Motion.

In addition, Jordan's Motion claims that the government "repeatedly mischaracterized" his statements to the FBI as a "confession." Mot. at 16. Yet, notwithstanding the arguments in his Motion, Jordan never objected to the

government's use of the term "confession" during trial, whether in opening statements, during the direct or redirect examination of FBI Supervisory Special Agent ("SSA") Luca, or as part of closing argument and rebuttal. Further, when cross-examining SSA Luca, defense counsel questioned whether Jordan had actually confessed, *see* Tr. 557:23-558:06, and asked about the FBI's training related to obtaining confessions, *see* Tr. 559:17-560:04. And, in closing argument, defense counsel challenged the government's use of the term "confession." *See* Tr. 1350:01-06. So, to the extent there was any mischaracterization (and there was not), that issue was squarely before the jury to consider during its deliberation. More importantly, Jordan fails to accept that it *was* a confession when he told the FBI that he "plac[ed] fake trades with the intent to cancel them in order to mislead the market into believing there was a false sense of supply or demand." Tr. 507:03-05 *cf. United States v. Chanu*, 40 F.4th 528, 540 (7th Cir. 2022) ("*Coscia* establishes that placing orders on opposite sides of the commodities market with the intent to cancel amounts to a deceitful scheme, aiming to manipulate the market for the trader's own financial gain." (quotations and alterations omitted)). Jordan claims that, "at most," he confessed to the four-step strategy known as spoofing. Mot. at 17-18. But this argument ignores SSA Luca's testimony that Jordan said he engaged in spoofing to "mislead" the market—a point elicited from SSA Luca on direct examination (*see* Tr. 506:08-507:05), cross-examination (*see* Tr. 566:05-08), and re-direct examination (*see* Tr. 689:03-14). Further, SSA Luca testified that Jordan said he misled the market "into believing there was a false sense of supply or demand." Tr. 507:04-05. Nothing

about the statement Jordan seeks to admit through the rule of completeness affects whether his statements were properly characterized as a "confession."[6]

Ultimately, in his Motion (as with his Rule 106 motion before trial), "Jordan is seeking to introduce a hearsay statement—a *backward*-looking statement about his state of mind . . . to prove the truth of the assertion." Rule 106 Order at 3.[7] Jordan now persists and claims the Court erred by not admitting his hearsay statement. The Court should again reject Jordan's attempt to admit a self-serving false exculpatory that is inadmissible hearsay. *See United States v. Ferrell*, No. 11 CR 595, 2013 WL 2636108, at *5 (N.D. Ill. June 12, 2013) (rule of completeness does not overcome the issue that a "party's self-serving, exculpatory, out-of-court statement generally constitutes inadmissible hearsay").

---

[6] Jordan mistakenly claims that, in rebuttal, the government argued that the jury could convict him based solely on his confession; however, the very excerpt that Jordan cites in his Motion plainly refutes this argument. Mot. at 17 (quoting Tr. 1383). In that quote, the government discussed SSA Luca's testimony about the approach, the evidence (*i.e.*, the trading charts) that SSA Luca used to confront Jordan, and Jordan's resulting confession. *Id.* Each piece of evidence corroborated the other and compelled the same conclusion: Jordan acted with fraudulent intent. In any event, even if Jordan's characterization of the rebuttal statement is accurate (which it is not), the defense did not object then and does not now explain how such a statement would be the proper basis for the Court to grant a new trial.

[7] In the Court's Rule 106 Order, it noted two caveats to it conclusion that Jordan's Rule 106 motion must be denied. *See* Rule 106 Order at 3. First, the Court stated that the government could not "argue—or even imply—that Jordan failed to deny during the FBI interview that he did not know what he was doing was 'wrong.'" *Id.* Second, "if Jordan elects to testify and he testifies that he did not think he was doing anything wrong, then almost surely he will be able to introduce the otherwise omitted statement as a prior consistent statement under Rule 801(d)(1)(B)(i) or (ii)." *Id.* Neither caveat in the Court's Rule 106 Order applies, nor does Jordan assert that they do.

## IV. The Jury Instructions and Supplemental Instruction Were Appropriate

### a. The Court Properly Rejected the Defendant's Proposed Good Faith Jury Instructions

Jordan errs in arguing that a good faith jury instruction was appropriate because the Court's rejection of such an instruction was consistent with Seventh Circuit precedent, made after considering the evidence and arguments specific to this case, and remains correct. *See* Order on Jury Instructions, ECF No. 802 at 2. Jordan's arguments in his Motion for a good faith instruction are the same that he made pre-trial, which the Court already considered and rejected for two reasons: (1) a good faith instruction was unnecessary given that the jury needed to find an intent to defraud; and (2) such an instruction would risk the jury believing that mistake of law is a defense to wire fraud, which it is not. Jordan fails to show why the Court's prior ruling was incorrect, much less how it had any prejudicial effect on the jury's verdict.

The Court's first basis for rejecting a good faith instruction was that there was no benefit to giving the instruction because "[t]he definition of intent to defraud allows Jordan to make exactly the argument that he advances, namely, he honestly believed that he was not making false representations by placing the alleged large-side orders." Order at 2, ECF No. 802. And, as the Court predicted, that is exactly what Jordan argued to the jury. *See* Tr. 1348:10-22 ("So let's take a closer look at this element of criminal intent . . . . The question is, what did Chris think? And to fairly evaluate Chris' intent, we have to consider the context: The time at which he traded and the environment in which he traded. . . . [G]oing back to 2009, the evidence shows

that Chris was open and transparent about his use of the four-step strategy"); 1349:18-23 ("Ask yourself, if Chris believed that he was engaging in a fraud scheme, would he talk about it openly with a senior member of the business or with somebody who didn't even work at JPMorgan? Of course no. That's the last thing someone would do if they were knowingly engaged in a fraud"); 1349:18-20 ("He readily admitted that he engaged in the four-step strategy. That too is inconsistent with criminal intent"); 1357:7-12 ("There is no evidence, zero evidence, nothing to support the theory that Chris Jordan knew that spoofing was a violation of Rule 432"); 1360:10-12 ("But one thing Mr. King was sure about was that he never discussed spoofing with Chris, and he never told Chris that there was anything wrong with the four-step strategy"); 1361:14-1362:1 ("there is a complete and total failure of proof on the essential element of criminal intent").

More generally, the Court's decision to reject a good faith instruction aligns with the Seventh Circuit's recent decision in *Chanu*, which involved a substantially similar case of manual spoofing by precious metals traders at a large financial institution. 40 F. 4th 528 (7th Cir. 2022). In *Chanu*, the Seventh Circuit found no error in excluding a good faith instruction relating to the charged wire fraud scheme and "could not demonstrate that the failure to include the good faith instruction denied the defendants a fair trial." *Id.* at 543 (alterations omitted). The Court's decision in this case also was consistent with the Seventh Circuit's holding that a good faith instruction is "not needed where the jury is separately instructed to make a finding that the defendant acted knowingly and with the intent to deceive." *United*

*States v. Mutuc*, 349 F.3d 930, 934-35 (7th Cir. 2003); *see also United States v. Johnson*, 874 F.3d 990, 1002 (7th Cir. 2017) ("A good faith instruction is not required where lack of good faith is part of the charge" including those which required the jury to find "intent to commit fraud"); *United States v. Lunn*, 860 F.3d 574, 579-80 (7th Cir. 2017) ("it is impossible to intend to deceive while simultaneously acting in good faith.").

The Court's second basis for rejecting a good faith instruction was that such an instruction "poses the risk of misleading jurors into thinking that a defense along the lines of 'mistake of law' is viable, when it is not." Order at 2, ECF No. 802. As proven by the jury's question seeking clarification on the definition of "knowingly," the Court's concern was legitimate. *See* Dkt. 815, *see also* Tr. 1394-1404. Moreover, the Court's order denying the good faith instruction—which was issued near the close of the government's case—was based in part on the fact that there was already "plentiful cross-examination suggesting that the defendant was not on sufficient notice that the conduct now known as spoofing violated his employers' compliance policies or CME Rule 432." Order at 2, ECF No. 802.

Jordan attempts to distinguish his case from that of his co-defendants (where the Court also declined to give a good faith instruction during their separate trial in July 2022) because, unlike his co-defendants, Jordan "aggressively challenged the testimony from the government's compliance and CME witnesses that the rules and policies actually prohibited spoofing in 2008 to 2010." Mot. at 24. This distinction—if it even exists—is irrelevant to the question at hand because the same mistake-of-law

risks were present in both trials (if not further magnified in Jordan's case by the defense theory that he highlights). Specifically, given the extensive cross-examination and argument about what rules and prohibitions were in place in 2008 to 2010, and to what level of specificity such policies addressed the four-step spoofing pattern, the jury might misinterpret a good faith instruction as exculpating Jordan if he did not understand what he did was a violation of law, which is not a valid defense. Moreover, the Court already considered this same argument when rejecting Jordan's original request for a good faith instruction. *See* Dkt. 802 at 2 ("Jordan argues that his defense is different from that of the co-defendants, but for purposes of this instruction, there is really no distinction. Here, like the earlier trial, the good faith instruction is unnecessary to advance the defense of good faith because Jordan can still argue the absence of an intent to defraud"). The Court's reasons for rejecting a good faith instruction were correct at the time and remain so now.

Finally, no prejudice resulted from the lack of a good faith instruction because Jordan strenuously argued the exact theory of the case that his Motion now claims he was prevented from presenting. In his Motion, Jordan argues that by denying a good faith instruction, the Court "impeded the presentation of one of our key theories of defense," which was that the defendant "believed his conduct to be permissible under market rules at the time of his trading" such that he did not possess the criminal intent to defraud or make a materially false statement to others in the market. *See* Mot. at 6. The record shows otherwise. First, the defense case rested heavily on cross examining the government's witnesses on whether Jordan knew that

the four-step pattern was prohibited by the exchange or his employers. *See* Tr. 955:11-956:05, Tr. 960:21-961:13 (Cross Examination of Erin Middleton); Tr. 732:05-733:11, 734:10-16, 739:04-25 (Cross Examination of David King); Tr. 831:06-23, 837:10-15, 848:04-13, 862:17-863:08 (Cross Examination of Mark Catana). Moreover, as noted above, this theme was featured prominently in Jordan's closing argument. Jordan's theory of the case was thoroughly presented to (and ultimately rejected by) the jury through arguments about the lack of criminal intent and/or misrepresentations; whether a good-faith instruction was given made no difference because the same arguments were still advanced. There was no prejudice suffered from the denial of a good faith instruction and, as a result, this is no basis for a new trial. *Maclin*, 915 F.3d at 444.

### b. The Court's Response to the Jury Note Was Appropriate

The supplemental instruction delivered in response to a jury question about the meaning of "knowingly" satisfies the Seventh Circuit's standard for supplemental jury instructions and was appropriate given the arguments presented in this case. With respect to supplemental instructions generally, the Supreme Court has made clear that, "[w]hen a jury makes explicit its difficulties, a trial judge should clear them away with concrete accuracy." *Bollenbach v. United States*, 326 U.S. 607, 612-13 (1946). Echoing this principle, the Seventh Circuit has stated that "the court has an obligation to dispel any confusion quickly and with concrete accuracy," and that "[i]ssuing a supplemental instruction to the jury is an acceptable means of addressing jury confusion." *United States v. Sims*, 329 F.3d 937, 943 (7th Cir. 2003). Courts are

afforded discretion regarding "[t]he necessity, extent, and character of any supplemental instructions . . . ." *United States v. Franco*, 874 F.2d 1136, 1143 (7th Cir. 1989). "The court's power to reinstruct includes within it the power to reformulate or supplement instructions previously provided to the jury." *United States v. He*, 245 F.3d 954, 958 (7th Cir. 2001) (citations omitted). Supplemental instructions designed to clarify the law are permissible, so long as the supplemental instructions are legally accurate. *Franco*, 874 F.2d at 1143. In reviewing supplemental instructions, the Seventh Circuit examines three factors: (1) whether the instructions as a whole fairly and adequately treat the issues; (2) whether the supplemental instruction is a correct statement of the law; and (3) whether the district court answered the jury's question specifically. *United States v. Carani*, 492 F.3d 867, 874 (7th Cir. 2007). For the reasons stated below, the Court's supplemental instruction satisfied all three of these factors.

*First*, the Court's supplemental instruction fairly and adequately addressed the issue presented by the jury's note, which asked for clarification on "is aware of the nature of [the defendant's] conduct" with respect to the "Definition of Knowingly" instruction. *See* ECF No. 817. As the Court noted after receiving the jury note,

> [I]t is a concern, as I've raised pretrial and as often does happen in fraud cases, that the jury might very well be trying to figure out whether the defendant, in order to be convicted, must know that the conduct violated federal law . . . given the intense debate over whether or not the defendant's conduct violated compliance rules or the CME Rule 432, they might very well be hung up on – you know, because it's just a very short half a step to question whether or not the defendant knew what he was doing violated the law.

Tr. 1396:08-19. The jury note on its face made clear that there was confusion as to whether Jordan needs to be "aware of the nature of his conduct," and a response from the Court, therefore, was necessary. The Court explained that the proposed response should explain, "that there is no, in essence, willfulness requirement that the defendant must be aware that his conduct violates federal law but at the same time remind them that they do need to find that he had the intent to deceive or cheat." Tr. 1399:03-07.

Moreover, as a whole, the supplemental instruction also included additional reminders "to ensure that the supplemental instruction was understood by the jury in the larger context of the prerequisites for conviction under the statute." *He*, 245 F.3d at 959. Specifically, the response (1) reminded the jury that the government must prove beyond a reasonable doubt all of the elements of wire fraud; (2) repeated the full definition of "intent to defraud," which included that the defendant act "knowingly with the intent to deceive or cheat"; and (3) told the jurors that they must consider the instructions as a whole. ECF No. 815. Such precautions "help to establish that the jury instructions as a whole were a fair and adequate treatment of the issues in this case." *Id*.

*Second*, the supplemental instruction was a correct statement of law and Jordan points to no authority suggesting otherwise. The Seventh Circuit has affirmed a definition of knowingly that included the note: "To act knowingly does not mean that a defendant had to realize he was violating the law." *United States v. Brown*, 739 F.2d 1136, 1144 n.5 (7th Cir. 1984); *see also*, Gov't Position Re: Proposed

Supplemental Jury Instruction, Dkt. 814 at 2-3. Similarly, in *United States v. Blagojevich*, the Seventh Circuit upheld a jury instruction for wire fraud counts that stated: "the government is not required to prove that the defendant knew his acts were unlawful" because "the sentence just reminds the jury that mistake of law is not a defense," which was appropriate because the district court "was concerned that [the defendant] had been trying to argue mistake-of-law indirectly even though none of the statutes require[d] legal knowledge." 794 F.3d 729, 739 (7th Cir. 2015).

*Third*, the Court's response specifically answered the jury's question. The note made clear that the jury required more information about one specific provision of the "knowingly" definition—the phrase "is aware of the nature of his conduct." As the Court noted, "There was extensive examination on whether the Defendant's conduct violated a policy or Rule 432, and . . . it is not a far step at all to then ask whether the Defendant must know that the alleged conduct violated federal law." ECF No. 815 at 1. Jordan argues that the supplemental instruction was inappropriate because the jury instructions "fairly and adequately explained the meaning of 'knowingly,' and it was entirely speculative that the jury note related to confusion regarding the viability of a mistake of law defense." Mot. at 26. This argument should be rejected for the same reasons that the Court previously rejected it: Jordan's possible alternative interpretations of the jury's question were "not realistic." *See* Order at 2, ECF No. 815. The argument is no more realistic when repeated again in Jordan's Motion. For these reasons, the Court's supplemental instruction satisfied the Seventh Circuit's standard for supplemental jury instructions and is no basis for granting a new trial.

## V.  Conclusion

For the foregoing reasons, the Court should deny the defendant's Motion.

Dated: February 27, 2023          Respectfully submitted,


                                  /s/ *Matthew F. Sullivan*
                                  Matthew F. Sullivan
                                  Lucy B. Jennings
                                  Christopher Fenton
                                  U.S. Department of Justice
                                  Criminal Division, Fraud Section
                                  (202) 578-6583 (Sullivan)
                                  matthew.sullivan2@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew F. Sullivan, hereby certify that on February 27, 2023, I caused the foregoing filing to be electronically filed with the Clerk of Court by using the Court's electronic filing system, which will automatically send a notice of electronic filing to the parties who have entered an appearance in this case.


 /s/ *Matthew F. Sullivan*
Matthew F. Sullivan