UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHRISTOPHER JORDAN | Case No. 19-cr-00669<br><br>Hon. Edmond E. Chang |

# DEFENDANT CHRISTOPHER JORDAN'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR A NEW TRIAL UNDER RULE 33

James J. Benjamin, Jr.
Parvin D. Moyne
Anne M. Evans
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
(212) 872-1000

Megan Cunniff Church
MOLOLAMKEN LLP
300 N. LaSalle Drive
Suite 5350
Chicago, Illinois 60654
(312) 450-6700

*Counsel for Christopher Jordan*

On behalf of our client, Christopher Jordan, we respectfully submit this reply memorandum of law in support of our motion for a new trial pursuant to Fed. R. Crim. P. 33 (ECF No. 837).[1]

## ARGUMENT

### I. The Post-Dodd-Frank Compliance and CME Evidence Should Have Been Allowed

In its opposition, the government offers three arguments against the admission of post-Dodd-Frank compliance and CME evidence to impeach the testimony of Mr. Catana, Mr. King, and Ms. Middleton. *See* Opp. 3-8. Each is meritless.

*First*, the government argues that the challenged evidence was properly excluded because "the government could have proven its case without showing that Jordan knew his deceptive trading strategy was prohibited by JPMorgan or Credit Suisse's compliance policies." Opp. 3-4. The compliance and CME materials, the government argues, merely "corroborated the government's other intent evidence, which was substantial." *Id.* at 4. Although the government does not cite the harmless-error standard, it appears to be arguing that the exclusion of the challenged evidence, even if erroneous, would not have made a difference in the outcome of the trial. But this argument is belied by the government's opposition to our Rule 29 motion, which relies heavily on the compliance and CME evidence to sustain the jury's verdict. *See* Rule 29 Opp. 7-8, 13-15. It also ignores the government's heavy emphasis on the compliance and CME evidence in its opening statement and closing argument. *See* 12/1/22 Tr. 243-45; 12/7/22 Tr. 1326-31, 1334. Finally, it ignores that our Rule 33 motion is based on the combined effect of multiple errors.

---

[1] "Mot." refers to our memorandum of law in support of Mr. Jordan's motion for a new trial pursuant to Rule 33 (ECF No. 838); "Opp." refers to the government's opposition to our Rule 33 motion (ECF No. 848); "Rule 29 Opp." refers to the government's opposition to our Rule 29 motion (ECF No. 847); "Evans Decl." refers to the declaration of Anne M. Evans, filed with our opening memorandum of law (ECF No. 839); and "[date] Tr." refers to trial proceedings.

1

*Second*, the government argues that Mr. Jordan suffered no prejudice because the defense was able to cross-examine the compliance and CME witnesses on the fact that the word "spoofing" did not appear in the relevant policies and rules. Opp. 5-6. But the government fails to acknowledge that the defense was hamstrung from eliciting the most critical point: that the banks and the CME *changed* their policies and rules *after Mr. Jordan's departure* from Wall Street by introducing *new language* that, *for the first time*, expressly banned spoofing. *See* Mot. 10. This would have undermined the testimony of the government's witnesses on an issue that was central to the case: whether there were clear and well-understood rules against spoofing at the time Mr. Jordan was trading for JPMorgan and Credit Suisse. Excluding the evidence was error, and it resulted in significant prejudice to Mr. Jordan. *See United States v. Chaparro*, 956 F.3d 462, 479 (7th Cir. 2020) (impeachment by contradiction "simply involves presenting evidence that part or all of a witness' testimony is incorrect") (citations omitted); *United States v. Boswell*, 772 F.3d 469, 476 (7th Cir. 2014) (impeachment by contradiction "involves presenting evidence that the substance of a witness's testimony is not to be believed").[2]

*Third*, the government argues that the Court properly excluded the post-Dodd-Frank compliance and CME exhibits on Rule 403 grounds, to avoid an impermissible mistake of law

---

[2] As part of its "no prejudice" argument, the government relies on the jury instruction that "[e]ven if there is evidence that the defendant violated any compliance policies or CME rules, that violation would not, standing alone, be sufficient to convict the defendant." Opp. 6-7. But the cited jury instruction has no bearing on whether the compliance policies and CME rules did or did not clearly prohibit Mr. Jordan's conduct. The excluded evidence was directly relevant to that question.

The government also hypothesizes that if the Court had allowed the disputed compliance and CME evidence, "the jury likely would have also heard that after Dodd-Frank's explicit ban on spoofing became effective in July 2011 (and put everyone on notice of spoofing's illegality), Jordan continued to engage in the same deceptive trading strategy." Opp. 7. But the Court correctly excluded the First New York evidence because it was not relevant to the charged offense of wire fraud affecting a financial institution, which ended in 2010. *See* ECF No. 744, at 3-5. Moreover, and as explained in our motion to exclude the 2011 evidence, First New York's compliance manual and training materials said *not a word* about Dodd-Frank or about spoofing in the brief period that Mr. Jordan worked there. ECF No. 693 at 7 n.3, 12; ECF No. 741 at 4 n.2, 6. As a result, even if the First New York compliance documents had been admitted, the government would not have been able to establish that Mr. Jordan was on notice of policies or exchange rules against spoofing while he was trading.

defense. Opp. 7-8. But the challenged evidence *was not* offered for the purpose of proving or disproving any principle of law; it was offered to rebut the government's contention that bank policies and exchange rules clearly prohibited spoofing during the time that Mr. Jordan was trading at JPMorgan and Credit Suisse. It was the *government*, not the defense, that put the bank policies and exchange rules at issue. Once the government did so, it was unfair for the Court to tie the defense's hands by allowing only a partial and ineffective response. And then, to make matters worse, during jury deliberations the Court nevertheless gave a jury instruction on mistake of law. The result was a whipsaw of unfairness that deprived Mr. Jordan of a fair trial.

## II. The Court Erred by Allowing the Government to Offer a Truncated and Misleading Version of Mr. Jordan's Statement to the FBI

In seeking to justify the admission of an incomplete and misleading excerpt of Mr. Jordan's statements to Agent Luca, the government suggests that the omitted portions would have been relevant only if the *mens rea* standard for wire fraud were willfulness. Opp. 9-11. In this regard, the government cites a portion of this Court's order that characterized the omitted portion as "ambiguous" because it might be read to mean that Mr. Jordan didn't think his trading strategy was illegal. Opp. 11. We respectfully submit that this is not a fair characterization of Mr. Jordan's statement to Agent Luca, and that the admission of the truncated version of the statement was clear error under Rule 106 that deprived Mr. Jordan of a fair trial.

In context, it is clear that when Mr. Jordan told Agent Luca that he "did not think what he was doing was wrong," *see* Evans Decl., Ex. J., at DOJ-0017116834, he was referring to his understanding of whether spoofing was wrongful in the sense that it was contrary to accepted market practice and applicable compliance policies. There was no discussion of law during the lengthy FBI interview. What the omitted portion *did* say—that Mr. Jordan didn't think what he was doing was wrong, that all of his orders were at risk of execution, and that JPMorgan did not

3

provide any training on spoofing during the transition from open-outcry to electronic trading—was relevant and exculpatory. It was a core theme of our defense that the applicable compliance policies and CME rules did not clearly apply to spoofing when Mr. Jordan was trading at JPMorgan and Credit Suisse, and that the behavior was not inherently wrongful in light of well-accepted practices that permitted traders to camouflage their intentions and strategies to gain an advantage in the competitive world of futures trading. *See, e.g.*, 12/1/22 Tr. 357-67 (Scheerer); 12/5/22 Tr. 1020-22, 1028-30 (Varner).

In its opposition papers, the government doubles down on its characterization of Mr. Jordan's statement to Agent Luca as a "confession." Opp. 12-13. But this just underscores why the Court's exclusion of the omitted portions of the statement was so devastatingly prejudicial. With the benefit of the Court's Rule 106 ruling, it was easy for the government to characterize the statement as a "confession." But this characterization could only work if the jury was presented with a truncated, incomplete excerpt that—like legal alchemy—magically transformed the statement from a protestation of innocence to a confession of guilt.

Trials are supposed to be an exercise in seeking the truth, and Rule 106 was adopted to prevent the sort of unfairness and distortion that occurred in this trial. *See* Fed. R. Evid. 106, Advisory Comm. note to 1972 Proposed Rules; *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 171-72 (1988). In this case, the requirements of Rule 106 were satisfied. The omitted portions were necessary to explain the portions of the statement that were presented by the government. Those portions should have been admitted to place the rest of the statement in context, to avoid misleading the trier of fact, and to ensure a fair and impartial understanding of the evidence. *See United States v. Glover*, 101 F.3d 1183, 1190 (7th Cir. 1996); *see also United States v. LeFevour*, 798 F.2d 977, 981 (7th Cir. 1986); *United States v. Paladino*, 401 F.3d 471, 476 (7th Cir. 2005).

4

### III. Mr. Jordan Was Significantly Prejudiced by the Jury Instructions

The government argues that the good faith instruction should not have been given, and that the Court's response to the jury note was proper. Opp. 14-21. Both arguments fail.

### A. The Good Faith Instruction

The government argues that the good faith instruction was unnecessary because Mr. Jordan was able to argue his lack of intent to defraud at summation. Opp. 14-15, 17-18. But this overbroad argument could just as easily be used to justify the denial of *any* defense request for a jury instruction. The case law on theory of defense jury instructions is clear: a defendant "is entitled to have the jury consider any theory of the defense which is supported by the law and which has some foundation in the evidence, however tenuous." *United States v. Briscoe*, 896 F.2d 1476, 1512 (7th Cir. 1990) (citations omitted); *see also United States v. Cruse*, 805 F.3d 795, 814 (7th Cir. 2015) (defendant's theory of defense instruction should be given when "(1) the instruction represents an accurate statement of the law; (2) the instruction reflects a theory that is supported by the evidence; (3) the instruction reflects a theory which is not already part of the charge; and (4) the failure to include the instruction would deny the defendant a fair trial.") (citations omitted); *cf. United States v. Buchmeier*, 255 F.3d 415, 426-27 (7th Cir. 2001) (denying a theory of defense instruction where "there was no factual support in the record to justify the instruction"). Here, there is no dispute that the requested good faith instruction is legally correct; it appears in the Seventh Circuit Pattern Jury Instructions and has been given in a number of other spoofing trials. *See* Mot. 19. It is likewise uncontested that the theory was supported by the evidence, including the lack of clear policies from banks or the exchange during the time that Mr. Jordan was trading,

the general market practice permitting camouflage or concealment of a trader's objectives, and Mr. Jordan's openness and transparency about the spoofing tactics that he used. *See* Mot. 20-21. [3]

The government leans heavily on the Seventh Circuit's decision in *Chanu* and this Court's ruling in *Smith*, both of which held that a good-faith instruction was not required on the facts of those particular cases. Opp. 15-17. But as is clear from *Chanu* and *Smith*, the inquiry is fact-dependent and case-specific. *United States v. Chanu*, 40 F.4th 528, 543 (7th Cir. 2022); *United States* v. *Smith*, 19 CR 669 (N.D. Ill. July 26, 2022) (ECF No. 648). And the evidence in both *Chanu* and *Smith* was meaningfully different from the evidence in Mr. Jordan's trial. In both *Chanu* and *Smith*, the charged trading extended past the effective date of Dodd-Frank and, as a result, there was no attempt by any defendant to argue that there were no clear policies and exchange rules against spoofing at the time of the trading. Indeed, in the very first part of the *Chanu* opinion, the Court of Appeals recited unchallenged evidence that Deutsche Bank policies and CME rules "prohibited" the spoofing activity in which the defendants were found to have engaged. *Chanu*, 40 F.4th at 533. Here, by contrast, debates about policies and exchange rules were front-and-center. Given the general principle that trading practices that camouflaged and concealed information were expected and permitted, and the defense theory that there were no clear policies or rules against spoofing in 2009 and 2010, the defense was entitled to a good faith instruction. The jury should have been instructed that, if they found that Mr. Jordan honestly believed his orders did not involve a materially false representation or promise, then he lacked the intent to defraud required to prove the offense of wire fraud affecting a financial institution.

---

[3] The evidentiary foundation would have been even more robust had the Court allowed the defense to offer the exculpatory portions of Mr. Jordan's statements to Agent Luca and to cross-examine the compliance and CME witnesses with relevant documents that contradicted their testimony. *See supra* at 1-4.

## B. The Court's Response to the Jury Note

Despite the government's fixation with stamping out the specter of a "mistake of law" defense elsewhere in its Rule 33 opposition, *see* Opp. 7-11, 16-17, at the tail end of its submission the government does a 180 and strongly defends the Court's decision to introduce mistake of law into the case, for the first time, in response to an ambiguous jury note. *See* Opp. 18-21. The government's argument illustrates the way it has improperly weaponized the mistake of law issue throughout this litigation to foreclose key avenues of our defense.

It was *the government* that chose to present, and argue about, evidence of compliance policies and exchange rules. As outlined above, certain of the Court's evidentiary rulings prevented us from adequately responding to this evidence for fear that a "mistake of law" issue would be raised (even though the defense repeatedly disavowed any intention to raise such an issue). That was prejudicial. And the prejudice was compounded when the Court administered a mistake of law instruction anyway, after the jury had been out for two days. In essence, with the exclusion of key state of mind evidence and the supplemental instruction during deliberations, the government had it both ways, to Mr. Jordan's great detriment.

Consistent with *United States v. Blagojevich*, 794 F.3d 729, 739 (7th Cir. 2015), it would have been proper to give a good faith instruction alongside a cautionary instruction to the jury that Mr. Jordan did not need to know whether his alleged conduct violated federal law. Such a balanced approach would have allowed the jury to hear an instruction on the theory of the defense while avoiding any risk of misunderstanding about mistake of law. But that that did not happen. Instead, the jury heard only the pro-government part of this balance.

In considering whether to give a supplemental instruction, the Court noted that it was a "very short half a step" between violating compliance policies or CME rules and violating federal law. 12/8/22 Tr. 1396. That may well be the case. However, because of the way the government

7

framed and presented this case, that "short half a step" was the principal battleground on which the trial was fought. We respectfully submit that the combined effect of the challenged evidentiary rulings and the challenged jury instructions unfairly tilted that battleground in the government's favor, and deprived Mr. Jordan of a fair trial.

## CONCLUSION

For the foregoing reasons, the Court should grant Mr. Jordan's motion for a new trial pursuant to Fed. R. Crim. P. 33.

Dated: March 15, 2023

Respectfully submitted,

 */s/ James J. Benjamin, Jr.*
James J. Benjamin, Jr.
Parvin D. Moyne
Anne M. Evans
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
(212) 872-1000

Megan Cunniff Church
MOLOLAMKEN LLP
300 N. LaSalle Drive
Suite 5350
Chicago, Illinois 60654
(312) 450-6700

*Counsel for Christopher Jordan*